**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2022-CT-00990-SCT**

***ZACHARY MINOR***

***v.***

***STATE OF MISSISSIPPI***

**ON WRIT OF CERTIORARI**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/04/2021 |
| TRIAL JUDGE: | HON. DEBRA W. BLACKWELL |
| TRIAL COURT ATTORNEYS: | TIMOTHY DAVID BLALOCK<br>SHAMECA SHANTE' COLLINS<br>STANLEY ALEXANDER<br>PAUL DRAUGHN SULLIVAN |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER<br>BY: GEORGE T. HOLMES<br>W. DANIEL HINCHCLIFF |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL<br>BY: ASHLEY LAUREN SULSER |
| DISTRICT ATTORNEY: | SHAMECA SHANTE' COLLINS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 02/27/2025 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1. We granted certiorari to answer two questions regarding Zachary Minor's trial for possession of marijuana and trafficking of Tetrahydrocannabinol (THC). First, whether any of several errors are reversible. Second, whether the errors combine to constitute cumulative error. The Court of Appeals answered no to both questions and affirmed Minor's conviction

in a split decision.[1] We, however, hold that the collective impact of the errors deprived Minor of a fair trial. Therefore, we reverse the Court of Appeals' decision and remand this case to the circuit court for a new trial.

## FACTS AND PROCEDURAL HISTORY

### *Minor's Alleged Crimes*

¶2. On July 1, 2019, Mississippi Bureau of Narcotics (MBN) Agents Jerry Stewart and Martez Simpson awaited the delivery of a package to a residence in Natchez, Mississippi. The United States Postal Service (USPS) had notified MBN that it suspected the package contained marijuana and edibles, so the agents had elected to stake out the package's delivery address and await the package's recipient.

¶3. Eventually a pickup truck drove past the residence prior to the package's delivery. The truck did not stop, instead rounding the cul-de-sac and exiting the street. Later that same day, USPS delivered the package, the truck returned, and the truck's driver, Mario Hartwell, exited the truck and retrieved the package. The agents then exited their vehicle and identified themselves to Hartwell. But Hartwell did not respond, opting to drop the package and flee.

¶4. After the agents thwarted Hartwell's escape, Agent Stewart approached the idle truck. Inside sat Minor. Agents Stewart and Simpson later testified at trial that, upon engaging Minor, they gleaned two items of evidence from his phone. First, Agent Stewart testified that

---

[1] Chief Judge Barnes authored the majority, joined by Presiding Judges Carlton and Wilson, and Judges Greenlee, Smith, and Emfinger. Judge McDonald concurred in part and in the result without separate written opinion. Judge Lawrence dissented with separate written opinion, joined by Judges Westbrooks and McCarty. Judges McDonald and Smith joined that opinion in part.

he noticed the package's USPS tracking number on Minor's phone and that Minor "immediately shut his phone and locked it." According to Agent Stewart, he was familiar enough with the tracking number to recognize it displayed on Minor's phone. Second, Agent Simpson testified that he observed a text message on Minor's phone that read, "Let me credit a gram, bro, to Friday, bro[,]" and that he obtained a photograph of the text message, a copy of which was entered into evidence.

¶5. Regarding the package, Agent Stewart later testified that the package's label contained only one word to denote the package's intended recipient: "Minor." Further, following Agent Stewart's obtaining a search warrant, forensic analysis of the package's contents revealed that the package contained marijuana and THC edibles.

¶6. On March 16, 2021, a grand jury indicted Minor and Hartwell jointly on four counts: (1) conspiracy to possess marijuana under Mississippi Code Section 97-1-1 (Rev. 2014), (2) conspiracy to traffic THC under Section 97-1-1, (3) possession of marijuana with intent to distribute under Mississippi Code Section 41-29-139 (Rev. 2018), and (4) trafficking THC under Section 41-29-139. Minor subsequently filed a motion to sever on June 23, 2021, which the circuit court granted on June 28, 2021.

***State's Conduct at Trial***

¶7. The circuit court conducted a jury trial on October 21, 2021. In presenting its case, the State made several errors. First, in its opening statement, the State impermissibly commented on Minor's right to remain silent: "So they go and they talk to Mr. Minor who is sitting in the truck, and *he doesn't want to talk to them* which is his right, but they looked

at his phone and guess what was on his phone. The tracking information for the package."

(Emphasis added.)

¶8. Second, during its direct examination of Agent Stewart, the State elicited inflammatory testimony regarding the effect of edibles on children without an evidentiary basis:

| | |
|---|---|
| [THE STATE]: | Agent Stewart, in your experience as an MBN agent, have you seen drugs disguised as candy in the past? |
| [AGENT STEWART]: | Yes, sir. |
| [THE STATE]: | What is the specific danger of those type items? |
| [AGENT STEWART]: | A lot of times they will be marketed to young children to be honest with you. |
| [THE STATE]: | Do grown folks need their drugs disguised for them? |
| [AGENT STEWART]: | No, sir. |
| [THE STATE]: | Have you in your experience ever seen a child that has gotten ahold of some of these drugs that were marketed for them? |
| [AGENT STEWART]: | Yes, sir. I have seen children go to the hospital due to what looked to be candy -- |
| [THE DEFENSE]: | Your Honor, object to relevance. |
| [THE STATE]: | Your Honor, it's relevant because these products are marketed in that way, and this is the evidence that the -- they retrieved from the defendant. It's relevant. |
| [THE DEFENSE]: | More prejudicial than probative. |

[THE COURT]: The Court is going to sustain the objection.

¶9. Third, during its redirect examination of Agent Stewart, the State elicited an out-of-court statement made by Hartwell, whom Minor did not have the opportunity to cross-examine:

[THE STATE]: [The defense] asked you a question, and I don't know if he got the right answer so I'm going to follow up on it. He asked you what else ties [Minor] to the case, and you said his co-defendant.

[AGENT STEWART]: That's correct, sir.

[THE STATE]: How does his co-defendant tie him to the case?

[THE DEFENSE]: Your Honor, I'm going to object to any hearsay.

[THE STATE]: Your Honor, he opened the door.

[THE DEFENSE]: I did not open that door.

[THE COURT]: You did open the door . . . . You asked the witness what else tied your client to this case to which Mr. Stewart said his co-defendant. So this is a follow-up question to that. The Court is going to allow it.

[THE STATE]: Tell me how the co-defendant ties him to the case.

[AGENT STEWART]: The co-defendant indicated this was not the first time that himself and Mr. Minor had did this in the same means and manner.

[THE DEFENSE]: Your Honor, I'd object as to hearsay. He can testify that -- any other way. He's trying to go to the proof -- the truth of the matter asserted, not what was actually -- (pause)

[THE COURT]: [Response]?

[THE STATE]: *I'll move on*, Your Honor. Now, in addition, *the co-defendant said this wasn't the first time*; is that correct?

[AGENT STEWART]: Yes, sir.

(Emphasis added.)

¶10. Fourth, in its closing argument, the State referenced the inadmissible hearsay previously ruled on by the circuit court and used Hartwell's guilt as evidence of Minor's guilt, a blatant violation of the severance:

[THE STATE]: The question to be answered by the jury is -- what it boils down to [is] whether . . . Mr. Minor actively participated with Mario Hartwell, the other person involved in this thing, to possess this marijuana and all this THC, and the jury instructions that the Judge read to you make abundantly plain that Mario Hartwell is criminally liable for what Mr. Minor did and likewise Mr. Minor is criminally liable. He's guilty here today because of his cooperation and participation, his joining in with Mario Hartwell. So that every act Mr. Minor did, Mr. Minor is responsible for, and it's really quite easy to consider the facts in this case.

. . . .

*Isn't it amazing that as soon as [Agent Stewart] started saying what Mario said he objected. If you guys want to know what are you objecting to you guys knowing about it. He doesn't want to know what Mario said because what Mario said was, hey. We've done this several times. That's what he said and you heard Agent Stewart say he said that.* And let me say this, ladies and gentlemen --

[THE DEFENSE]: Your Honor, I object.

| | |
|---|---|
| [THE COURT]: | Your objection will [be] noted. This is closing argument. Proceed[.] |
| | . . . . |
| [THE STATE]: | He got caught with his buddy, and him and his buddy had all this weed. Him and his buddy had all this THC. They're guilty of possession of the weed with intent to distribute, and they're guilty of trafficking of the THC because of the weight, and that's just it. |

(Emphasis added.)

¶11. When the State rested, Minor moved for a mistrial. He argued that the admission of Hartwell's out-of-court statement over his objection was more prejudicial than probative and tainted the jury. The circuit court denied his motion, however, finding that the statement "would not result in substantial irreparable prejudice to [Minor's] case." Minor then moved for a directed verdict on all counts. The circuit court granted his motion as to counts one and two, finding that the State had not presented sufficient evidence to prove its prima facie case for conspiracy. The court denied his motion as to counts three and four, however, finding that the State had presented sufficient evidence upon which a reasonable jury could find Minor guilty of possession with intent and trafficking.

¶12. The jury ultimately found Minor guilty of counts three and four. And on November 4, 2021, the circuit court sentenced him (1) to ten years for count three and (2) to twenty years for count four with ten years to serve and ten years suspended, the sentences to be served in the custody of the Mississippi Department of Corrections and to run concurrently. Minor subsequently filed a motion for a new trial on November 9, 2021. He again argued

that the admission of Hartwell's out-of-court statement over his objection irreparably prejudiced him. But the circuit court denied his motion on November 19, 2021. Minor appealed.

***Court of Appeals' Decision***

¶13. Relevant to our review, Minor argued on appeal "that prosecutorial misconduct and the admission of hearsay was reversible error and warrants a new trial." ***Minor v. State***, No. 2022-KA-00990-COA, 2024 WL 804539, at *2 (Miss. Ct. App. Feb. 27, 2024).

¶14. The Court of Appeals held Minor waived the inadmissible hearsay issue because he (1) did not contemporaneously object to the State's eliciting the inadmissible hearsay, (2) did not move for a mistrial based on the hearsay until the State rested, (3) did not argue against the hearsay on Confrontation Clause grounds until his motion for a mistrial, and (4) did not appeal the circuit court's denial of his motion for a mistrial. ***Id.*** at *2, *4. In addition to waiver, the Court of Appeals also held (1) the admission of the inadmissible hearsay was harmless and (2) that no reversible error occurred regarding the hearsay. ***Id.***

¶15. On prosecutorial misconduct, the Court of Appeals found no reversible error regarding both the State's commenting on Minor's right to remain silent and the State's eliciting testimony regarding the effect of edibles on children because (1) Minor did not object to the State's comment, (2) the comment did not require the circuit court to object on its own motion, and (3) the circuit court sustained Minor's objection to the testimony regarding the edibles. ***Id.*** at *6. Further, the Court of Appeals held (1) that Minor waived a challenge to the State's comment during its closing argument because he did not contemporaneously

object to the comment and (2) that the comment did not prejudice Minor and was harmless *Id.* at *5. It also noted that the jury was instructed not to treat prosecutorial statements as evidence. *Id.* at *6.

¶16. All of the errors considered, the Court of Appeals found neither reversible error nor cumulative error. *Id.* at *6-7. Judge Lawrence dissented, however. He wrote:

> [T]he State went beyond acceptable trial tactics and brought legal chaos to Minor's trial by continuously violating principles of law designed to ensure a fundamentally fair trial.
>
> . . . .
>
> The appellate courts of this State have never refrained from addressing outrageous and improper conduct by attorneys in our criminal justice system. . . . I believe that the cumulative errors by the State—commenting on a defendant's right to remain silent, intentionally eliciting improper hearsay even after announcing to the court that the prosecution would "move on," asking highly inflammatory questions without any evidentiary basis, and making improper closing arguments—require reversal and remand for a new trial.

*Id.* at *10 (Lawrence, J., dissenting).

¶17. Following the Court of Appeals' decision, Minor filed a motion for rehearing on March 12, 2024, which the Court of Appeals denied on June 4, 2024. Minor then filed a Petition for Writ of Certiorari on June 19, 2024, which this Court granted on August 29, 2024.

## DISCUSSION

¶18. On certiorari, Minor raises each error and argues their cumulative effect denied him a fair trial. We agree. While each error alone might not have deprived him of a fair trial, their combined effect went too far.

¶19. First, the State commented on Minor's right to remain silent, which violated his rights under the Fifth Amendment to the United States Constitution. As this Court has held, and as Judge Lawrence pointed out, "the accused's right to be silent . . . is equally as strong as the right not to testify and it is error to comment on either." ***Emery v. State***, 869 So. 2d 405, 408-09 (Miss. 2004) (quoting ***Quick v. State***, 569 So. 2d 1197, 1199 (Miss. 1990)); *see generally* ***Griffin v. California***, 380 U.S. 609, 614, 85 S. Ct. 1229, 14 L. Ed. 106 (1965) ("For comment on the refusal to testify is a remnant of the 'inquisitorial system of criminal justice,' which the Fifth Amendment outlaws." (citation omitted) (quoting ***Murphy v. Waterfront Comm'n***, 378 U.S. 52, 55, 84 S. Ct. 1594, 12 L. Ed. 678 (1964), *overruled on other grounds by* ***United States v. Balsys***, 524 U.S. 666, 118 S. Ct. 2218, 141 L. Ed. 2d 575 (1998))).

¶20. Second, the State elicited inflammatory testimony regarding the effect of edibles on children with no evidentiary basis for doing so, which violated Minor's right not to have the jury unjustly prejudiced against him. ***Stewart v. State***, 263 So. 2d 754, 758-59 (Miss. 1972) ("[I]n a criminal case, the [State] . . . should not appeal to passion and prejudice." (citing ***Craft v. State***, 226 Miss. 426, 84 So. 2d 531 (1956))). Again as this Court has held, and as Judge Lawrence pointed out, "[p]rosecutors should not indulge in personal abuse or vilification of the defendant." ***Harris v. State***, 537 So. 2d 1325, 1330 (Miss. 1989). Here, the State's eliciting the effect of edibles on children could have had only one purpose: to suggest to the jury that Minor was affirmatively endangering children. That suggestion is without question a vilification of Minor that ventured well beyond the evidentiary confines

of the charges against him. ***Id.***; *see* ***Franklin v. State***, 136 So. 3d 1021, 1031 (Miss. 2014) ("[T]he jury's decision must be based on the evidence; thus any verdict based on 'bias, passion, or prejudice' will be overturned." (quoting ***Sheppard v. State***, 777 So. 2d 659, 661 (Miss. 2000))). Accordingly, the State committed prosecutorial misconduct by eliciting the testimony.

¶21. Third, the State, following two objections by Minor and the State's own promise to "move on," elicited an out-of-court statement made by Hartwell, which violated Minor's rights under the Sixth Amendment to the United States Constitution as well as the Mississippi Rules of Evidence. Because Minor did not have the opportunity to cross-examine Hartwell, he was not afforded the protections guaranteed to him by the Confrontation Clause. ***Willis v. State***, 352 So. 3d 602, 612 (Miss. 2022) ("Both our federal and state constitutions protect one's right to confront the witnesses against him or her." (citing U.S. Const. amend. VI; Miss. Const. art. 3, § 26)). Specifically, and more detrimental, Minor did not have the opportunity to cross-examine the man whose hearsay statement declared that Minor had previously committed the same crime for which he was on trial. *See generally* ***Smith v. State***, 986 So. 2d 290, 296 (Miss. 2008) ("[The] truthfinding function of the Confrontation Clause is uniquely threatened when an accomplice's confession is sought to be introduced against a criminal defendant without the benefit of cross-examination." (alteration in original) (internal quotation marks omitted) (quoting ***Lee v. Illinois***, 476 U.S. 530, 541, 106 S. Ct. 2056, 90 L. Ed. 2d 514 (1986))). None of the hearsay exceptions set forth in Mississippi Rules of Evidence 803 and 804 apply to the out-of-court statement. The

statement was therefore inadmissible hearsay prohibited by the Rules. *See* MRE 803, 804. The Court of Appeals admitted the same, holding "the State's questioning combined with Agent Stewart's reply constituted inadmissible hearsay . . . ." ***Minor***, 2024 WL 804539, at *4 (majority opinion).

¶22. Last, in its closing argument, the State (1) pronounced that Minor was guilty because Hartwell was guilty and (2) implied that Hartwell's out-of-court statement, coupled with Minor's objection to it, confirmed Minor's guilt, both of which violated Minor's rights under this Court's prior holdings. To borrow from Judge Lawrence's dissent a third time, this Court has held that "the prosecutor is not permitted to use tactics which are inflammatory, highly prejudicial and reasonably calculated to unduly influence the jury." ***Hiter v. State***, 660 So. 2d 961, 966 (Miss. 1995) (citing ***Acevedo v. State***, 467 So. 2d 220, 226 (Miss. 1985); ***Forrest v. State***, 335 So. 2d 900, 903 (Miss. 1976); ***Craft v. State***, 271 So. 2d 735, 737 (Miss. 1973)). Further,

> [t]he law is well settled in this state that where two or more persons are jointly indicted for the same offense but are separately tried, a judgment of conviction against one of them *is not competent evidence* on the trial of the other because such plea of guilty or conviction is no evidence of the guilt of the party being tried.

***Buckley v. State***, 223 So. 2d 524, 528 (Miss. 1969) (emphasis added) (citations omitted). Considering these holdings, the State's invoking Hartwell's out-of-court statement, as well as referencing Minor's objection to it, in order to prove Minor's guilt was clear prosecutorial misconduct. Hartwell's guilt and his hearsay allegations toward Minor served only to unduly influence the jury toward a guilty verdict, one not based on the valid evidence introduced at

trial. ***Hiter***, 660 So. 2d at 966 (citing ***Acevedo***, 467 So. 2d at 226; ***Forrest***, 335 So. 2d at 903; ***Craft***, 271 So. 2d at 737).

¶23. Given the combined gravity of these four errors, we align with Judge Lawrence's application of the cumulative-error doctrine. ***Minor***, 2024 WL 804539, at *10 (Lawrence, J., dissenting). Admittedly we, like the Court of Appeals, can identify applicable procedural bars sufficient to deny Minor relief from any of the individual errors. But a line must be drawn, a line to dispel the notion that endless errors can be rectified on procedural grounds. Under these facts, the cumulative effect of the errors is simply too detrimental to ignore.

¶24. Put plainly, the State violated Minor's rights under the United States Constitution twice; the State violated the Mississippi Rules of Evidence; and the State committed prosecutorial misconduct first in its opening statement, then in its examination of Agent Stewart, and finally in its closing argument. These errors—errors that may not be reversible when standing alone—are precisely what the cumulative-error doctrine was crafted to remedy. ***Ross v. State***, 954 So. 2d 968, 1018 (Miss. 2007) ("[The cumulative-error doctrine] holds that individual errors, which are not reversible in themselves, may combine with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial." (citing ***Byrom v. State***, 863 So. 2d 836, 847 (Miss. 2003))); ***Ambrose v. State***, 254 So. 3d 77, 110 (Miss. 2007) ("Under the cumulative-error doctrine, even if any specific error is insufficient for reversal, we may reverse if the cumulative effect of all the errors deprived the defendant of a fundamentally fair trial." (internal quotation marks omitted) (quoting ***Corrothers v. State***, 148 So. 3d 278, 324-25

(Miss. 2014))).

¶25. Indeed, "[t]he cumulative error doctrine stems from the doctrine of harmless error . . . ." ***Ross***, 954 So. 2d at 1018. Multiple errors can no doubt be harmless, but we find it necessary to apply the cumulative-error doctrine when the fundamental fairness of a trial is destroyed, as it was here. We stress again that, at multiple points throughout the trial, the State violated the United States Constitution and various procedural rules to declare to the jury that Minor was guilty. We therefore cannot possibly say beyond a reasonable doubt that the jury's verdict would remain guilty had the errors not occurred. *See generally* ***Chapman v. California***, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed 2d 705 (1967) ("[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."). Further, we agree with Judge Lawrence's apt conclusion that "the State went beyond acceptable trial tactics and brought legal chaos to Minor's trial by continuously violating principles of law designed to ensure a fundamentally fair trial." ***Minor***, 2024 WL 804539, at *10.

¶26. The dissent claims that legal chaos was pacified for many of the same reasons as the Court of Appeals—procedural bars, the admission of inadmissible hearsay being harmless, Minor's objection to the State's eliciting testimony regarding the effect of edibles on children being sustained, the jury's being instructed that prosecutorial statements are not evidence, and the State's comments during closing arguments not being unjustly prejudicial. Diss. Op. ¶¶ 42, 51, 60, 64, 67, 68. As discussed above, those reasons do not cure the destruction of Minor's fundamental right to a fair trial. The reasons instead isolate the errors to disguise

their cumulative effect. The dissent goes a step further than the Court of Appeals with its application of ***Davis v. State***, 660 So. 2d 1228 (Miss. 1995), however. Twice it emphasizes that ***Davis*** dealt with capital murder. Diss. Op. ¶¶ 43, 69. The apparent purpose of this emphasis is to diminish the gravity of Minor's case, implying that this Court should not find cumulative error in a drug-related case if it did not do so in a capital-murder case. But we note that the evidence against Davis was overwhelming—eyewitness identification of Davis as the shooter, five witnesses who saw Davis near or at the crime scene, Davis's being in possession of clothes witnesses claimed he wore at the crime scene, etc. ***Davis***, 660 So. 2d at 1237. The same cannot be said of the evidence against Minor. Without the admission of Hartwell's inadmissible out-of-court statement, the evidence does not overwhelmingly prove possession, either actual of constructive. How then can we say "with confidence that the inflammatory material [Hartwell's inadmissible out-of-court statement claiming Minor had *committed the same crime previously*] had no harmful effect upon the jury[?]" Diss. Op. ¶ 33 (internal quotation mark omitted) (quoting ***Smith v. State***, 457 So. 2d 327, 336 (Miss. 1984)).

**CONCLUSION**

¶27. The cumulative effect of the errors is manifest. The State commented on Minor's right to remain silent; elicited inflammatory testimony regarding the effect of edibles on children with no evidentiary basis for doing so; elicited an out-of-court statement made by Hartwell, whom Minor did not have the opportunity to cross-examine; cited that out-of-court statement as proof of Minor's guilt in its closing argument; and improperly implied Minor

must be guilty because Hartwell was.

¶28. While Minor's procedural failures render the individual errors not reversible, his failures do not preclude application of the cumulative-error doctrine. Because the State pervaded the trial with errors, from its opening statement all the way through its closing argument and because the errors so deeply undermined the fairness of the trial, we apply the cumulative-error doctrine to restore Minor's right to a fair trial. We therefore reverse and remand this case to the circuit court for a new trial.

¶29. **REVERSED AND REMANDED.**

**KING AND COLEMAN, P.JJ., AND CHAMBERLIN, J. CONCUR. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MAXWELL AND BRANNING, JJ. RANDOLPH, C.J., AND SULLIVAN, J., NOT PARTICIPATING.**

**GRIFFIS, JUSTICE, DISSENTING:**

¶30. The majority concludes "that the collective impact of the [State of Mississippi's] errors deprived [Zachary] Minor of a fair trial." Maj. Op. ¶ 1. The majority concedes that it "can identify applicable procedural bars sufficient to deny Minor relief from any of the individual errors." Maj. Op. ¶ 23. But it asserts, "a line must be drawn . . . to dispel the notion that endless errors can be rectified on procedural grounds. Under these facts, the cumulative effect of the errors is simply too detrimental to ignore." Maj. Op. ¶ 23. I respectively disagree and dissent.

¶31. "The cumulative error doctrine stems from the doctrine of harmless error, codified under Mississippi Rule of Civil Procedure 61." ***Ross v. State***, 954 So. 2d 968, 1018 (Miss. 2007). "It holds that individual errors, which are not reversible in themselves, may combine

with other errors to make up reversible error, where the cumulative effect of all errors deprives the defendant of a fundamentally fair trial." ***Id.*** (citing ***Byrom v. State***, 863 So. 2d 836, 847 (Miss. 2003)). "[P]rejudicial rulings or events that do not even rise to the level of harmless error will not be aggregated to find reversible error." ***Id.***

¶32. "[W]hen considering whether individual errors are harmless or prejudicial, relevant factors to consider in evaluating a claim of cumulative error include whether the issue of innocence or guilt is close, the quantity and character of the error, and the gravity of the crime charged." ***Id.*** "That is, where there is not overwhelming evidence against a defendant, we are more inclined to view cumulative errors as prejudicial." ***Id.***

¶33. In considering the cumulative impact of the State's errors, "[w]e will reverse a conviction unless it can be said with confidence that the inflammatory material had no harmful effect upon the jury." ***Smith v. State***, 457 So. 2d 327, 336 (Miss. 1984) (quoting ***Tudor v. State***, 299 So. 2d 682, 685-86 (Miss. 1974)). But "[w]here there is no reversible error in any part, . . . there is no reversible error to the whole." ***Doss v. State***, 709 So. 2d 369, 401 (Miss. 1996) (alterations in original) (internal quotation marks omitted) (quoting ***McFee v. State***, 511 So. 2d 130, 136 (Miss. 1987)). A conviction will "not warrant reversal where the cumulative effect of alleged errors, if any, was procedurally barred." ***Id.*** (citing ***Davis v. State***, 660 So. 2d 1228, 1256 (Miss. 1995)).

¶34. Here, as will be discussed in more detail below, every assignment of error raised by Minor on appeal is procedurally barred. Notwithstanding the procedural bar, when considered collectively, the cumulative effect of all errors did not deprive Minor of a

fundamentally fair trial. ***Ross***, 954 So. 2d at 1018 (citing ***Byrom***, 863 So. 2d at 847).

*I. Impermissible Hearsay*

¶35. Minor argues, and the majority agrees, that the trial court erred when it allowed testimony regarding codefendant Hartwell's out-of-court statement. Maj. Op. ¶ 21. But as the record reflects, this issue is procedurally barred and harmless.

¶36. Hartwell's involvement in this case was a running theme throughout the trial. The State argued that Minor and Hartwell conspired to sell drugs. Minor, on the other hand, argued that Hartwell alone sold drugs and that he was an innocent bystander who just happened to be riding in the truck with Hartwell that day. Despite the majority's assertion that the State "elicited" the statement, the record shows that references to the statement at issue began when defense counsel cross-examined Mississippi Bureau of Narcotics Agent Jerry Stewart.

> [Defense Counsel]: And really the only thing you have connecting Mr. Minor to this is that he was there, right?
>
> Agent Stewart: No, sir.
>
> [Defense Counsel]: What else do you have?
>
> Agent Stewart: There is a specific tracking number placed on the parcel box that was located in Mr. Minor's phone.
>
> . . . .
>
> [Defense Counsel]: Apart from this number, is there anything else that ties Mr. Minor to this case?
>
> Agent Stewart: His co-defendant.
>
> [Defense Counsel]: I have no further questions, Your Honor.

| | |
|---|---|
| The Court: | Redirect. |
| [The State]: | [Defense counsel] asked you a question, and I don't know if he got the right answer so I'm going to follow up on it. He asked you what else ties him to the case, and you said his co-defendant. |
| Agent Stewart: | That's correct, sir. |
| [The State]: | How does his co-defendant tie him to the case? |
| [Defense Counsel]: | Your Honor, I'm going to object to any hearsay. |
| [The State]: | Your Honor, he opened the door. |
| [Defense Counsel]: | I did not open that door. |
| The Court: | You did open the door[.] You asked the witness what else tied your client to this case to which [Agent] Stewart said his co-defendant. So this is a follow-up question to that. The Court is going to allow it. |
| [The State]: | Tell me how the co-defendant ties him to the case. |
| Agent Stewart: | The co-defendant indicated this was not the first time that himself and Mr. Minor had d[one] this in the same means and manner. |
| [Defense Counsel]: | Your Honor, I'd object as to hearsay. . . . |
| The Court: | [State]? |
| [The State]: | I'll move on, Your Honor. |
| [The State]: | Now, in addition, the co-defendant said this wasn't the first time; is that correct? |
| Agent Stewart: | Yes, sir. |

¶37. As the Court of Appeals properly noted,

[T]he prosecutor's initial question did not necessarily call for hearsay; the

> State simply asked Agent Stewart, "[H]ow does the co-defendant tie [Minor] to the case?" When defense counsel objected to the question on the basis of hearsay, the trial judge said the defense had opened the door to the line of questioning and "allow[ed]" it. However, "a party cannot 'open the door' to hearsay." ***Veazy v. State***, 113 So. 3d 1226, 1233 (¶ 24) (Miss. 2013).

***Minor v. State***, No. 2022-KA-00990-COA, 2024 WL 804539, at *3 (Miss. Ct. App. Feb. 27, 2024) (second, third, and fourth alterations in the original).

¶38. "Defense counsel then asserted another hearsay objection in response to Agent Stewart's answer that Hartwell 'indicated' he and Minor had done this before 'in the same means and manner.'" ***Id.*** But while Minor objected based on hearsay, he did not secure a ruling on his hearsay objection, he did not ask for a limiting instruction, and he did not move for a mistrial.

¶39. In ***Snider v. State***, the defendant argued that the trial court erred by admitting irrelevant and inflammatory testimony. ***Snider v. State***, 755 So. 2d 507, 510 (Miss. Ct. App. 1999). Though the defendant had objected to the testimony, the trial court had responded by instructing the prosecutor to "[m]ove on to something else." ***Id.*** (internal quotation mark omitted). On appeal, this Court held that the defendant's failure "to insist upon a ruling" or "request a limiting instruction" waived the argument for appellate review. ***Id.*** Specifically, the Court stated:

> Firstly, a defendant has a duty to insist upon a ruling upon a motion, and failure to do so waives the issue. ***Hemmingway v. State***, 483 So. 2d 1335, 1337 (Miss. 1986). In this case, Snider's attorney did not request the trial court be more explicit in its decision, and this failure waived the issue. Secondly, if a trial court sustains an objection to inadmissible evidence, the moving party has a duty to request a limiting instruction, and failure to request the instruction waives the issue. ***Holland v. State***, 705 So. 2d 307, 342 (Miss. 1997). As such, even assuming the trial court sustained Snider's objection and

> simply instructed the prosecution to "move on" to another line of questioning, Snider had a duty to request a limiting instruction for the jury, and the failure to do so waived the issue.

***Id.***

¶40. Here, as in ***Snider***, Minor failed to insist upon a ruling on his objection and to request a limiting instruction, thereby waiving this argument for appellate review.

¶41. Additionally, when the State responded that it would "move on" but then asked again about Hartwell's statement, no further objection was made by Minor. A contemporaneous objection must be made at trial in order to preserve the issue for appeal. ***Smith v. State***, 530 So. 2d 155, 162 (Miss. 1988) (citing ***Lockett v. State***, 517 So. 2d 1317 (Miss. 1987)). And although Minor moved for a mistrial on the basis of inadmissible hearsay, he did so only after the State presented two more witnesses and rested. I agree with the Court of Appeals that "this issue was not preserved for appellate review" and is waived. ***Minor***, 2024 WL 804539, at *4.

¶42. I further agree with the Court of Appeals that "[w]aiver notwithstanding, while the State's questioning combined with Agent Stewart's reply constituted inadmissible hearsay, we find such error harmless in light of the evidence of Minor's guilt." ***Id.*** Indeed, as the Court of Appeals noted:

> Minor was present at a residence that was not his own immediately after the package was delivered.
>
> Minor and Hartwell were closely monitoring the package's progress and . . . the package was addressed to [someone with] Minor['s] [last name]. Agent Stewart testified that their truck had driven by before the package was delivered, and the men reappeared in the truck following the postal worker's delivery of the package. Minor had the tracking number on his phone when

> confronted by agents. Minor had received a text message from someone asking Minor to credit him "a gram," indicating that Minor was involved in the drug trade.

***Id.*** at *3 (citation omitted).

¶43. In ***Davis***, we affirmed the defendant's capital murder conviction and death sentence. ***Davis***, 660 So. 2d at 1233. On appeal, "Davis argue[d] that the State committed reversible error in referring during the guilt phase and the subsequent penalty phase to the fact that [the victim] was a police officer[,]" asserting "that [the victim]'s occupation as a police officer ha[d] no relevance in this case." ***Id.*** at 1247. The Court noted that Davis did not object to the references made during the guilt phase of the trial,[2] and it ultimately found that the "assignment of error [wa]s without substantive merit." ***Id.*** at 1248, 1249. Justice Banks, in his concurring opinion, agreed, but he noted: "The prosecutor's argument during the guilt phase that Davis could have been indicted for killing a police officer should not have been allowed. In light of the overwhelming evidence of guilt, however, the argument can be deemed harmless." ***Id.*** at 1266 n.4 (Banks, J., concurring).

¶44. Here, the inadmissible hearsay, i.e., the State's questions and Agent Stewart's response regarding Hartwell's out-of-court statement, should not have been allowed. But as in ***Davis***, this issue is harmless in light of the evidence of Minor's guilt. *See* ***id.***

¶45. The majority distinguishes ***Davis*** by asserting that "the evidence against Davis was overwhelming . . . . The same cannot be said of the evidence against Minor. Without the

---

[2] The Court also noted "that Davis offered no objection during the penalty phase" and that as a result, his argument was procedurally barred and without substantive merit. ***Id.*** at 1249.

admission of Hartwell's inadmissible out-of-court statement, the evidence does not overwhelmingly prove possession, either actual of constructive." Maj. Op. ¶ 26. I disagree.

¶46. The jury was instructed on what constitutes actual or constructive possession:

> The Court instructs the jury that Possession, as that term is used in this case, may be actual or constructive. A person has actual possession when he or she knowingly has direct, immediate, and exclusive physical control over the thing or object. A person has constructive possession when he or she lacks actual possession of the thing or object but knowingly has both the power and the intention, at a given time, to exercise control or dominion over the thing or object; either directly or through another person.

¶47. The trial testimony shows that Minor had knowledge of the drugs and exercised control or dominion over the drugs.[3] Specifically, the testimony showed that the package was addressed to someone with the same last name as Minor, that *Minor* possessed the tracking number for the package, that *Minor* was closely monitoring the package (Minor and Hartwell drove by the delivery address once and then reappeared just after the mail carrier delivered the package), and that *Minor* received a message on *his* phone from someone asking Minor to credit him "a gram." Based on this evidence, I do not find that Hartwell's inadmissible out-of-court statement had a "harmful effect upon the jury." ***Smith***, 457 So. 2d at 336 (quoting ***Tudor***, 299 So. 2d at 685-86).

¶48. This assignment of error is procedurally barred and harmless.

*II. Prosecutorial Misconduct*

[3] For constructive possession, "there must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. . . . Constructive possession may be shown by establishing that the drug involved was subject to [the defendant's] dominion or control." ***Haynes v. State***, 250 So. 3d 1241, 1245 (Miss. 2018) (alterations in the original) (quoting ***Hudson v. State***, 30 So. 3d 1199, 1203 (Miss. 2010)).

¶49. When reviewing claims of prosecutorial misconduct, we will reverse "[w]here prosecutorial misconduct endangers the fairness of a trial and the impartial administration of justice[.]" ***Goodin v. State***, 787 So. 2d 639, 645 (Miss. 2001) (citing ***Acevedo v. State***, 467 So. 2d 220, 226 (Miss. 1985)).

*A. Right to Remain Silent*

¶50. During opening statements, the State, while referring to the facts of the case, stated as follows:

> They opened the box and guess what they found? Almost a kilogram of weed, over a kilogram of edibles. So they go and they talk to Mr. Minor who is sitting in the truck, and he doesn't want to talk to them which is his right, but they looked at his phone and guess what was on his phone. The tracking information for the package.

Minor argues, and the majority agrees, that this was an improper comment of Minor's right to remain silent. Maj. Op. ¶ 7. Minor claims that "*[e]vidence* of post-arrest silence is improper, because it violates the accused's right against self-incrimination." (Emphasis added.) But Minor's claim fails for two reasons.

¶51. First, Minor admittedly failed to object to the State's comment. As previously noted, "for preservation of error for review, there must be [a] contemporaneous objection[]." ***Smith***, 530 So. 2d at 162 (citing ***Lockett***, 517 So. 2d 1317). Because Minor failed to object, this issue is waived and procedurally barred.

¶52. While Minor asserts this issue should be reviewed under the plain-error doctrine, he fails to conduct such a review. Indeed, Minor does not address how his claim satisfies the plain-error doctrine. Nevertheless, "[t]his Court has long held that, even without the

defendant attorney's objection, 'unwarranted and improper remarks of a district attorney would warrant reversal where there was "most extreme and intolerable abuse of his privilege . . . ."''" ***Jackson v. State***, 174 So. 3d 232, 236 (Miss. 2015) (alteration in original) (quoting ***Randall v. State***, 806 So. 2d 185, 221 (Miss. 2001)). The State's comment during opening statements does not meet this standard.

¶53. Although the prosecutor stated that Minor did not want to talk to the MBN agents, the prosecutor reminded the jury that it was Minor's right not to, i.e., he had the right to remain silent. Additionally, the State never suggested or argued that Minor's silence was proof of guilt. In fact, the record reflects that during voir dire, the State explained to the venire that Minor "has a right to remain silent" and that Minor is "presumed innocent." Notably, the venire all indicated that it understood. I do not find the State's comment regarding Minor's right to remain silent amounted to a "most extreme and intolerable abuse of [the prosecutor's] privilege . . . ." ***Jackson***, 174 So. 3d at 236 (internal quotation marks omitted) (quoting ***Randall***, 806 So. 2d at 221).

¶54. Second, the comment was made during opening statements. "[O]pening statements are not evidence." ***Jones v. State***, 390 So. 3d 498, 502 (Miss. 2024) (citing ***Slaughter v. State***, 815 So. 2d 1122, 1132 (Miss. 2002)). And the jury was instructed as follows: "The evidence which you are to consider consists of the testimony and statement[s] of the witnesses and the exhibits offered and received . . . . Arguments, statements and remarks of counsel . . . are not evidence." Thus, despite Minor's assertion, the State's comment during opening statements did not provide or amount to "evidence" of post-arrest silence, and it did

not render Minor's trial unfair.

¶55. Minor warrants no relief on this assignment of error.

### *B. Edibles*

¶56. The package at issue contained marijuana and THC edibles, including chocolate chip cookies, rice crispy treats, and candy. During Agent Stewart's direct examination, the State asked the following questions:

> [The State]: Agent Stewart, in your experience as an MBN agent, have you seen drugs disguised as candy in the past?
>
> Agent Stewart: Yes, sir.
>
> [The State]: What is the specific danger of those type items?
>
> Agent Stewart: A lot of times they will be marketed to young children to be honest with you.
>
> [The State]: Do grown folks need their drugs disguised for them?
>
> Agent Stewart: No, sir.
>
> [The State]: Have you in your experience ever seen a child that has gotten a hold of some of these drugs that were marketed for them?
>
> Agent Stewart: Yes, sir. I have seen children go to the hospital due to what looked to be candy—
>
> [Defense Counsel]: Your Honor, object to relevance.
>
> [The State]: Your Honor, it's relevant because these products are marketed in that way, and this is the evidence that the—they retrieved from the defendant. It's relevant.
>
> [Defense Counsel]: More prejudicial than probative.
>
> The Court: The Court is going to sustain the objection.

¶57. Minor argues the State's series of questions was "irrelevant" and "sought to inflame the passions of the jury[.]" But Minor's argument fails for multiple reasons.

¶58. First, although Minor claims such questions were inflammatory, he cites nothing to support his argument. "The Court has no obligation to address issues in which there is a failure to cite relevant authority." ***Keller v. State***, 138 So. 3d 817, 860 (Miss. 2014) (citing ***Simmons v. State***, 805 So. 2d 452, 487 (Miss. 2001)).

¶59. Second, as Minor's appellate counsel acknowledged, much of the discussion was made without objection. As Minor's appellate counsel asserted, "[f]inally, an objection was [made] on relevance and sustained." Once an objection was made, the trial court sustained the objection. Minor did not ask for a limiting instruction or request a mistrial on this ground. "[I]f a trial court sustains an objection to inadmissible evidence, the moving party has a duty to request a limiting instruction, and failure to request the instruction waives the issue." ***Snider***, 755 So. 2d at 510 (citing ***Holland***, 705 So. 2d at 342). "There is no reversible error where the court did all that it was asked to do." ***Dukes v. State***, 369 So. 3d 553, 561 (Miss. 2023) (internal quotation marks omitted) (quoting ***Cotton v. State***, 675 So. 2d 308, 315 (Miss. 1996)).

¶60. Third, the jury was instructed as follows: "It is your duty to determine the facts and to determine them from the evidence produced in open court . . . . You should not be influenced by bias, sympathy or prejudice. Your verdict should be based on the evidence and not upon speculation, guesswork or conjecture." Notwithstanding the fact that his argument is procedurally barred, Minor's objection to the line of questions was sustained, and the jury

was ultimately instructed to base its decision solely on the evidence presented and not on speculation, guesswork, conjecture, bias, sympathy, or prejudice. "The Court assumes that juries follow the instructions given them by the trial court." ***Hill v. State***, 774 So. 2d 441, 446 (Miss. 2000) (citing ***Whittington v. State***, 748 So. 2d 716, 721 (Miss. 1999)). The prosecutor's comments or questions did not "endanger[] the fairness of [the] trial and the impartial administration of justice[.]" ***Goodin***, 787 So. 2d at 645 (citing ***Acevedo***, 467 So. 2d at 226).

¶61. This assignment of error is procedurally barred and without merit.

*C. Closing Arguments*

¶62. During closing arguments, the following discussion occurred:

> [Defense Counsel]: Let me start listing some of the stuff we don't know. Who was in the truck the first time. We don't know. Does Zachary Minor know what's in the box. We don't know. What would Mario—do you know one of the things I'd like to hear today is what would Mario Hartwell say when he got up here on the stand. Where is he? Boy, wouldn't that be great. That would answer a whole lot of questions. Mario Hartwell could get up and say stuff. You know why he's not up here? I would guess because they're afraid of what he would say. He'd say it was all me. We don't know. We don't know what Mario would say because he didn't come. We don't have that in front of us.
>
> . . . .
>
> [The State]: Who is Mario Hartwell? A defendant. And counsel opposite stood here and told you we should have called him. Isn't it good that we and I know the law and you know now that we can't call Mario Hartwell, but what I find to be so amusing that he said—and let me write down let me read because I don't want to misquote

counsel opposite. He wants to know what Mario would say. Isn't it amazing that as soon as the agent started saying what Mario said he objected. If you want to know what are you objecting to you guys knowing about it. He doesn't want to know what Mario said because what Mario said was, hey. We've done this several times. That's what he said and you heard Agent Stewart say he said that. And let me say this, ladies and gentlemen—

[Defense Counsel]: Your Honor, I object.

The Court: Your objection will [be] noted. This is closing argument. Proceed, Mr. [prosecutor].

. . . .

[The State]: Ladies and gentlemen, the evidence is overwhelming. I applaud the defendant with coming up with all these—I don't know—possibilities, but the truth of the matter is he got caught. He got caught with his buddy, and him and his buddy had all this weed. Him and his buddy had all this THC. They're guilty of possession of the weed with intent to distribute, and they're guilty of trafficking of the THC because of the weight, and that's just it. Just use your common sense.

¶63. Minor argues the prosecutor committed reversible misconduct when he referenced Hartwell's out-of-court statement and commented on Hartwell's conviction. "Attorneys are allowed a wide latitude in arguing their cases to the jury." ***Sheppard v. State***, 777 So. 2d 659, 661 (Miss. 2000). Counsel "may argue the deductions and conclusions that may reasonably be drawn" from the facts introduced into evidence. ***Fortenberry v. State***, 191 So. 3d 1245, 1251 (Miss. Ct. App. 2015) (citing ***Ivy v. State***, 589 So. 2d 1263, 1266 (Miss. 1991)). "However, prosecutors are not permitted to use tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury." ***Sheppard***, 777 So.

2d at 661 (citing ***Hiter v. State***, 660 So. 2d 961, 966 (Miss. 1995)).

> The standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created.

***Id.*** (citing ***Ormond v. State***, 599 So. 2d 951, 961 (Miss. 1992)).

*Hartwell's Out-of-Court Statement*

¶64. Minor argues that Hartwell's out-of-court statement was prejudicial because the prosecutor referred to it during closing arguments. But as previously discussed, Minor's argument regarding Hartwell's out-of-court statement is waived and procedurally barred. Additionally, notwithstanding the waiver, the State's questions and Agent Stewart's response regarding Hartwell's out-of-court statement, while inadmissible hearsay, was harmless error.

¶65. Moreover, like opening statements, closing arguments of counsel are not evidence, and "reversal is not required when a jury is properly instructed that statements made by counsel are not evidence." ***Brisco v. State***, 295 So. 3d 498, 519-20 (Miss. Ct. App. 2019) (citing ***Henton v. State***, 752 So. 2d 406, 409 (Miss. 1999)). Here, the jury was instructed that arguments by counsel are not evidence. The jury was further instructed to base its decision on the evidence alone and not to be influenced by prejudice. We assume the jury followed these instructions. ***Hill***, 774 So. 2d at 446 (citing ***Whittington***, 748 So. 2d at 721); *see also* ***Davis***, 660 So. 2d at 1249 ("Because the jury was instructed that closing argument was not evidence and was therefore instructed to disregard comments not supported by the evidence, this Court presumes that the jury followed the lower court's instructions and disregarded the prosecutor's argument that was not supported by the evidence." (citing ***Ormond***, 599 So. 2d

at 961)).

*Hartwell's Conviction*

¶66. Minor argues the prosecutor "committed reversible misconduct when he solicited evidence that the co-indictee had been convicted[.]" Minor claims that "[t]he use of a co-indictee's guilt is an abuse that should demand reversal." But as the record reflects, Minor did not object to the comment at trial. As a result, this argument is waived and procedurally barred. ***Smith***, 530 So. 2d at 162 (citing ***Lockett***, 517 So. 2d 1317).

¶67. Notwithstanding the procedural bar, the prosecutor did not state that Hartwell had been convicted. Instead, the prosecutor implied that based on the circumstances and facts, both Minor and Hartwell were guilty. Additionally, as previously discussed, closing arguments are not evidence. ***Brisco***, 295 So. 3d at 519 (citing ***Henton***, 752 So. 2d at 409). The jury was instructed that arguments by counsel are not evidence,[4] and we assume the jury followed the instructions. ***Hill***, 774 So. 2d at 446 (citing ***Whittington***, 748 So. 2d at 721).

¶68. Overall, I do not find that the prosecutor's comments during closing arguments "create[d] unjust prejudice against [Minor] so as to result in a decision influenced by the prejudice so created." ***Fortenberry***, 191 So. 3d at 1251 (internal quotation mark omitted) (quoting ***Slaughter***, 815 So. 2d at 1132).

*III. Cumulative Effect*

¶69. In ***Davis***, Davis appealed his capital murder conviction and death sentence, raising

[4] The jury was also instructed that it could convict Minor only if he was a participant and not merely a knowing spectator.

twelve issues and twenty sub-issues.[5] ***Davis***, 660 So. 2d at 1233-35. The Court found that "[t]he assignments of error raised by Davis [we]re without merit or procedurally barred," and it therefore declined to reverse Davis's conviction and death sentence based on "aggregate error." ***Id.*** at 1261. Thus, despite the numerous errors, we did not draw a line "to dispel the notion that endless errors can be rectified on procedural grounds." Maj. Op. ¶ 23. Instead, we affirmed the conviction and sentence. ***Davis***, 660 So. 2d at 1233-35.

¶70. Here, as in ***Davis***, Minor's assignments of error are procedurally barred. Notwithstanding the procedural bar, Minor's inadmissible hearsay claim is harmless in light of the evidence of Minor's guilt. Minor's prosecutorial misconduct claims regarding comments made during opening statements and closing arguments are not evidence and were not considered by the jury as evidence of guilt. And Minor's objection to the prosecutor's questions regarding edibles was sustained, and the jury was instructed to base its decision solely on the evidence presented and not on speculation, sympathy, or prejudice.

¶71. Considering the errors as a whole, I do not find that "the cumulative effect of all errors deprive[d] [Minor] of a fundamentally fair trial." ***Ross***, 954 So. 2d at 1018 (citing ***Byrom***, 863 So. 2d at 847). Despite Minor's assertions, he has failed to show that the State's "calculated abuses were clearly a tactical gameplan" or that the "prosecutorial abuses . . .

---

[5] One of the issues raised was prosecutorial misconduct, in which Davis asserted *six* alleged instances of misconduct: (1) "[t]he prosecutor referred to Mr. Davis' exercise of his right not to testify[,]" (2) "[t]he prosecutor made improper comments about defense counsel protecting their client's constitutional rights[,]" (3) "[t]he prosecutor argued that the jury had a 'duty' to find Davis guilty of capital murder[,]" (4) "[t]he prosecutor improperly defined reasonable doubt and negated the presumption of innocence[,]" (5) "[t]he prosecutor elicited improper testimony[,]" and (6) "[t]he prosecutor argued outside [the] record." ***Id.*** at 1234-35.

were part of a larger scheme to influence the jury to reach outside the evidence presented."

¶72. I would affirm the judgments of the Court of Appeals and of the Adams County Circuit Court and would uphold Minor's convictions and sentences.

**MAXWELL AND BRANNING, JJ., JOIN THIS OPINION.**